**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSHUA L. SMITH,**

      **Petitioner,**                  **CASE NO. 2:10-CV-00130**
                                          **JUDGE GEORGE C. SMITH**
      **v.**                       **Magistrate Judge E.A. Preston Deavers**

**MICHAEL SHEETS, WARDEN**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant Petition, Respondent's Return of Writ, Petitioner's Traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of this case as follows:

> In the early morning hours of January 1, 2006, the Washington Court House Police Department received a call from appellant who reported that he witnessed the murder of Michelle Morrison. After investigating appellant's report further, the police discovered the lifeless body of Morrison located in the bedroom of a now vacant home, a home in which appellant had lived two months earlier before it sustained fire damage.
>
> Later that same morning, while being questioned by police, appellant claimed J.M., a former friend and current Chillicothe resident, got into an argument with Morrison and hit her on the head with a PVC pipe while the trio was walking from a local bar. Upon investigating appellant's claim further, the police discovered that J.M. was not in Washington Courthouse that morning. Thereafter, following a police investigation, appellant was arrested and indicted for Morrison's

murder.

At trial appellant testified that his original statement to police implicating J.M. in Morrison's murder was false. Instead, appellant testified that he left the bar with Morrison that night, but, after she had walked ahead of him, he saw her attacked and beaten by two men smoking crack cocaine in an alley behind his former residence. Appellant also testified that after seeing Morrison attacked he became scared, ran into the vacant home, and hid in a small furnace room. Thereafter, while appellant hid in the furnace room, the two men dragged Morrison inside the house and hit her with a PVC pipe. Although he claimed to know one of the men who attacked Morrison, appellant refused to identify the attacker because he felt threatened and believed that his family was in danger. A Fayette County jury found appellant guilty and he was sentenced to serve a mandatory term of fifteen years in prison.

*State v. Smith*, No. CA20060-08-030, 2009 WL 1198841 (Ohio App. 12th Dist. Jan. 20, 2009).

Petitioner asserted the following assignments of error on appeal:[1]

1.   THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT [APPELLANT'S] MOTION TO SUPPRESS HIS STATEMENTS MADE TO LAW ENFORCEMENT.

2.   THE TRIAL COURT ERRED WHEN IT PERMITTED [APPELLANT'S] WIFE TO TESTIFY FOR THE STATE WITHOUT DETERMINING HER COMPETENCY UNDER EVID.R. 601.

3.   THE TRIAL COURT ERRED BY ENTERING A JUDGMENT OF CONVICTION FOLLOWING PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT, DENYING [APPELLANT] THE RIGHT TO

---

[1]   On January 19, 2007, the state appellate court dismissed Petitioner's timely appeal for failure to prosecute. *Exhibits 6, 7 to Return of Writ*. On June 22, 2007, Petitioner wrote a letter of complaint to the state appellate court. The Ohio Court of Appeals construed his letter as an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). On July 25, 2007, the appellate court reopened Petitioner's appeal and appointed new counsel on Petitioner's behalf to represent him in appellate proceedings. *Exhibits 8, 9 to Return of Writ*.

A FAIR TRIAL IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I. § 16 OF THE OHIO CONSTITUTION.

4.    [APPELLANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO USE OBJECTIONS, FAILED TO EFFECTIVELY CROSS-EXAMINE WITNESSES, FAILED TO SUBPOENA WITNESSES, FAILED TO INVESTIGATE, AND FAILED TO MOVE FOR A MISTRIAL WHEN WARRANTED.

5.    THE TRIAL COURT ERRED IN OVERRULING [APPELLANT'S] MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29.

6.    THE JUDGMENT OF CONVICTION IS CONTRARY TO LAW AND TO THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, IN THAT THERE WAS INSUFFICIENT EVIDENCE ADDUCED TO ESTABLISH EACH AND EVERY ELEMENT OF THE OFFENSE CHARGED BEYOND A REASONABLE DOUBT.

7.    THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

*Id*. at *1-10.  On January 20, 2009, the appellate court affirmed the trial court's judgment.  *Id*.  On June 17, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. Smith*, 122 Ohio St.3d 1410 (2009).

Petitioner also pursued post conviction relief.  On March 29, 2010, he filed a post conviction petition in the state trial court.  *Exhibit 17 to Return of Writ.*  The trial court apparently has never

issued a ruling on Petitioner's post conviction petition.[2]

On February 16, 2010, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the United States Constitution based upon the following grounds:

1.  The trial court erred when it failed to grant Smith's motion to suppress his statements to law enforcement.

2.  The trial court erred when it permitted Smith's wife to testify for the State without determining her competency.

3.  The trial court erred by entering a judgment of conviction following prosecutorial misconduct during closing arguments, denying Smith the right to a fair trial in violation of the Fourteenth Amendment of the United States Constitution.

4.  The petitioner was denied the effective assistance of counsel when trial counsel failed to use objections, failed to cross-examine witnesses, failed to subpoena witnesses, failed to investigate, failed to move for a mistrial when warranted, and was suspended indefinitely from the practice of law by the Supreme Court of Ohio.

5.  The trial court erred in overruling Smith's motion for judgment of acquittal pursuant to Crim. R. 29.

6.  The judgment of conviction is contrary to law, and to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, in that there was insufficient evidence adduced to establish each and every element of the offense charged beyond a reasonable doubt.

7.  The judgment of the trial court is contrary to the manifest weight of the evidence.

---

[2] Petitioner does not raise in these proceedings any issue set forth in his state habeas corpus petition.

4

It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

## CLAIM THREE

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration.  28 U.S.C. § 2254(b), (c).  If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Deitz v. Money,* 391 F.3d 804, 808 (6th Cir. 2004).  If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724;  *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims.  *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano,* 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural

> sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted). Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his claims on the merits if he establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.* 'Cause' under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isaac,* 456 U.S. 107, 135 (1982)). Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In claim three, Petitioner asserts that he was denied a fair trial due to prosecutorial

6

misconduct during closing arguments. Petitioner raised this claim on direct appeal; however, the state appellate court reviewed the claim for plain error because Petitioner had failed to object during trial:

> [A]ppellant argues that the prosecutor made statements during closing argument that prejudicially affected his substantial rights and denied him a fair trial. This argument lacks merit.
>
> The prosecution is entitled to a degree of latitude in its closing remarks. *State v. Cobb,* Butler App. No. CA2007-06-153, 2008-Ohio-5210, ¶ 115, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. For example, the "prosecutor may comment upon the testimony and suggest the conclusions to be drawn from it." *State v. Smith,* Butler App. No. CA2007-05-133, 2008-Ohio-2499, ¶ 7. However, "a prosecutor cannot express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused, or go beyond the evidence which is before the jury when arguing for conviction." *Id.* Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. *State v. Hill,* 75 Ohio St.3d 195, 204, 1996-Ohio-222. Instead, prosecutorial misconduct will only be found when the remarks made during closing argument were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore,* 111 Ohio St.3d 515, 857 N.E.2d 547, 2006-Ohio-6207, ¶ 62.
>
> Further, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial due to the prosecutor's prejudicial remarks. *State v. Murphy,* Butler App. No. CA2007-03-073, 2008-Ohio-3382, ¶ 9, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768. A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *Smith,* 2008-Ohio-2499 at ¶ 9.
>
> Appellant failed to raise any objections at trial regarding prosecutorial misconduct during the prosecution's closing argument. Therefore, because appellant raises the issue of prosecutorial misconduct for the first time on appeal, he has waived any challenge except for plain error. *Cobb,* 2008-Ohio-5210 at ¶ 117.

7

A plain error is any error or defect "affecting substantial rights [that] may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Baldev,* Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 12, citing *State v. Long* (1978), 53 Ohio St.2d 91, 95, 372 N.E.2d 804. Accordingly, an error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. *Baldev* at ¶ 12; *State v. Krull,* 154 Ohio App.3d 219, 796 N.E.2d 979, 2003-Ohio-4611, ¶ 38.

Initially, it should be noted that the jury was instructed that the statements made during opening and closing arguments were not evidence. See *State v. Myers,* Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 28. Therefore, we must presume that the jury followed the trial court's instructions. See *State v. Manns,* 169 Ohio App.3d 687, 864 N.E.2d 657, 2006-Ohio-5802.

Appellant argues that his conviction should be reversed because the "prosecution's closing argument was packed with improper remarks, vouching, assumption of facts that were not in evidence, and misstatements of the evidence." In support of this argument, appellant first claims that the prosecutor made prejudicial remarks which denied him a fair trial by stating that Officer Jean Boone "took a report about a stolen wallet down on East Market Street and went out there to investigate it" at approximately 2:50 a.m., thus placing her, according to appellant, "across the alley from the crime scene." However, even though Officer Boone actually testified that she took the report between 3:30 and 4:00 a.m., we fail to see how this misstatement prejudiced appellant in any significant manner, let alone denied him a fair trial. As a result, because appellant has failed to demonstrate that the prosecutor's statements had any prejudicial affect on the outcome of the trial, there is no error, let alone plain error.

Second, appellant essentially argues that the prosecutor made prejudicial remarks which denied him a fair trial when he stated that appellant had "extraordinarily short fingernails that you can't get any clippings from, [and that he] shaved [his] pubic hair, * * * the doctor said he tried but he didn't see anything in that manila envelope" to test. Appellant claims that this statement improperly suggested that

appellant cut his fingernails and shaved his pubic hair to eliminate any evidence that may have implicated him in the murder. However, based on our review of the record, we find that the prosecution was merely reiterating the testimony of Dr. Albert George Gay, who testified, in pertinent part, that he "was unable to collect any fingernail cuttings because the fingernails had been cut so short * * * and then also the pubic hair had been cut or shaved so short that [he] could not collect any pubic hair." As a result, the prosecutor was not improperly misstating the evidence presented, and therefore, no error exists, much less plain error.

Third, appellant argues that the prosecutor made prejudicial remarks which denied him a fair trial by stating Phillip Henry, appellant's cellmate, was told by appellant that investigators would not find any evidence on his shoes because he poured something on them. Specifically, appellant claims that the prosecutor's statement denied him a fair trial because "a BCI analyst testified that presumptive testing indicated the presence of blood on the shoes." However, based on our review of the record, the prosecutor's statement reiterated the exact testimony provided by Henry, who testified in pertinent part, that appellant told him "he poured something onto his real nice, expensive shoes * * * paint thinner, some kind of paint or something like that to cover up something * * *." As a result, the prosecutor's comment cannot be considered improper because it reiterated the exact testimony of Henry, and therefore, not in error.

Fourth, appellant argues that the prosecutor made prejudicial remarks when he "vouched for his own case" by stating; "Ladies and Gentlemen, [the police] waited two weeks to make an arrest. They wanted to make sure they had the right guy." However, based on our review of the record, we find that this statement was not improper "vouching," but instead, used to rebut appellant's claim that the police conducted a hurried investigation without eliminating all other leads prior to his arrest. See *State v. Farwell,* Clermont App. No. CA2001-03-041, 2002-Ohio-1912. Therefore, because we find this comment was not improper, no error exists.

Finally, appellant argues that the prosecutor made prejudicial remarks, which, according to appellant, were comments regarding his "prior bad acts." Specifically, appellant claims that the prosecutor made an improper statement by noting the police, when dispatched

9

to appellant's home to investigate prior claims of domestic violence, would "[u]sually [find] the lights * * * on, [and see appellant and his wife] yelling and carrying on," as opposed to the morning of January 1, 2006 when the police found the house dark and did not hear any yelling. Here, the prosecutor's statement, contrary to appellant's claims, did not constitute an improper comment on appellant's prior bad acts, but instead, merely highlighted what police believed to be the unusual nature of the residence when they arrived at his home that morning, and therefore, not in error.

In light of the foregoing, we find that the prosecution's closing statements were either not improper, or did not prejudice appellant so as to deny him a fair trial. Therefore, because we find no error in any of the prosecutor's statements challenged by appellant, much less plain error, his third assignment of error is overruled.

*State v. Smith*, 2009 WL 119841, at *5-7.

"When a habeas petitioner fails to obtain consideration of a claim by a state court, . . . due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available . . . that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000). Petitioner contends that he was denied a fair trial because of prosecutorial misconduct. This ground is defaulted because he failed to raise it at trial and the court of appeals reviewed it for plain error. Moreover, the United States Court of Appeals for the Sixth Circuit has held a state court's review of a claim for plain error review does not constitute a waiver of the state's procedural default rules. *Seymour*, 224 F.3d at 557.

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous

10

> objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).  Therefore, Petitioner has waived claim three for federal habeas corpus review.

Petitioner may still may obtain review of this claim on the merits, if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).

As cause for his procedural default, Petitioner asserts that his counsel was ineffective by failing to object.  He raises the same issue of ineffective assistance of counsel in claim four of his Petition.  Constitutionally-ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986)).

The state appellate court rejected petitioner's claim of ineffective assistance of counsel in relevant part as follows:

> [A]ppellant claims that his trial counsel was ineffective because he failed to object during the state's closing argument. However, as we discussed in appellant's third assignment of error, the prosecutor's closing argument was proper and did not prejudice appellant so as to deny him a fair trial. As a result, we find appellant's claim of ineffective assistance of counsel based on his failure to object to the statements made by the prosecutor during the state's closing argument is without merit.

*State v. Smith,* 2009 WL 119841, at *10.

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

In this habeas corpus petition, Petitioner raises various claims of ineffective assistance of counsel.  In *Strickland v. Washington*, the Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel."  466 U.S. 668, 686 (1984.)   To prevail on a complaint of ineffective assistance of counsel, a petitioner must demonstrate the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.  Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

Given the difficulties "inherent" the analysis of whether an attorney's performance was constitutionally deficient,"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."  *Id*.  Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 692.  A petitioner, therefore,

must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id.* at 693. To do so, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that Petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

For the reasons discussed by the state appellate court, this Court agrees that the prosecutor's statements about which Petitioner complains were not improper and did not prejudice him. He has failed to establish either ineffective assistance under the test set forth in *Strickland*, or cause and prejudice for his procedural default of claim three.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

14

## CLAIMS TWO AND FIVE

In claim two, Petitioner asserts that the trial court improperly failed to determine whether his wife was competent to testify under Rule 601(B) of the Ohio Rules of Evidence.[3]  In claim five, Petitioner asserts that the trial court improperly failed to grant his motion for judgment of acquittal pursuant to Ohio Criminal Rule 26.[4]  These claims present issues regarding the alleged violation of state law and, therefore, fail to present issues appropriate for federal habeas corpus relief.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States.  28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir. 1988). " '[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus.'" *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003) (quoting *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983) (other citations omitted)). The Court "must defer to a state court's interpretation of its own rules of evidence and

---

[3]  Rule 601(B) of the Ohio Rules of Evidence provides:

Every person is competent to be a witness except:

(B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:

(1) a crime against the testifying spouse or a child of either spouse is charged;

(2) the testifying spouse elects to testify.

[4]  To the extent that Petitioner raises a claim of insufficiency of the evidence, this assertion is discussed *infra*.

procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee,* 526 F.3d 388, 897 (6th Cir. 2008). The record fails to reflect such circumstances here.

Claims two and five are without merit.

## CLAIM ONE

In claim one, Petitioner asserts that the trial court improperly admitted his statements to police in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and thus erred by failing to grant his motion to suppress.  The state appellate court rejected this claim as follows:

> [A]ppellant argues that the trial court erred in denying his motion to suppress statements he made to police during three police interviews conducted on January 1 and January 6, 2006. Specifically, appellant claims that his statements to police were made while he was in custody, and therefore, obtained in violation of his Fifth Amendment right against self-incrimination because he was either not read his *Miranda* warnings, or did not validly waive those rights. This argument lacks merit.

> Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 329, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact, and therefore, is in the best position to resolve factual questions and evaluate witness credibility. *State v. Burnside,* 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Bryson* (2001), 142 Ohio App.3d 397, 402, 755 N.E.2d 964. The appellate court then determines, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *Id.*

It is well-established that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *State v. Huysman,* Warren App. No. CA2005-09-107, 2006-Ohio-2245, ¶ 13, quoting *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. The warnings outlined in *Miranda* are only required when there has been such a restriction on the person's freedom as to render him in custody. *Id.,* citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 494, 97 S.Ct. 711, 50 L.Ed.2d 714.

In determining whether an individual was in custody, a court must examine the totality of the circumstances surrounding the interrogation. *State v. Coleman,* Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. "[T]he ultimate inquiry is simply whether there [was] a 'formal restraint or restraint on freedom of movement' of the degree associated with a formal arrest." *Huysman* at ¶ 15, quoting *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275. In turn, a person is in custody if he is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement. *Huysman* at ¶ 15, citing *State v. Staley* (May 8, 2000), Madison App. No. CA99-08-019, at 7.

Additionally, it should be noted that a person is not in custody merely because he is questioned at the police station or because he is considered a suspect. *Mathiason,* 429 U.S. at 495. In fact, "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect, is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." *Huysman* at ¶ 16, quoting *Stansbury v. California* (1994), 511 U.S. 318, 324, 114 S.Ct. 1526, 128 L.Ed.2d 293. Further, a person is not in custody simply because they are transported to the police station by a police officer. *State v. Warren* (Oct. 25, 1996), Montgomery App. No. 15202, 1996 WL 612858, at *8. This is especially true when the person is free to leave at any time. *Id.* Instead, the ultimate determination of whether a person is in custody depends "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Huysman* at ¶ 16.

Appellant, in regards to his first police interview, claims that the trial court erred in finding that he was not in custody because he was questioned as a suspect, not a witness, and therefore, should have been given his *Miranda* warnings. However, contrary to appellant's claim, a determination of whether he was being questioned as a suspect is not dispositive of the custody issue, but rather, such a determination depends on the objective circumstances of the interrogation. *Mathiason* at 495; *Huysman* at ¶ 16.

Appellant called the police on January 1, 2006 at approximately 4:00 a.m. to report that he was a witness to Morrison's murder. In response, the police went to appellant's house, found him in a distressed state, and transported him to the police station in an effort to obtain his statement. Once he arrived at the police station, appellant was placed in an interview room where he met with Detective Jeff Funari. At the suppression hearing, Det. Funari testified that the door to the interview room was kept open, that appellant was given water, that appellant was able to use the restroom, and that he was never arrested or placed in custody. Det. Funari also testified that even though appellant was at the police station for at least three hours, his interview lasted approximately 20 minutes and that appellant was free to leave once it concluded.[FN1]

> FN1. Det. Funari testified that appellant stayed at the police station after his interview was complete because appellant's wife was also being interviewed and because photographs were being gathered in an effort to conduct a photo-array.

Considering the foregoing circumstances, the trial court determined that appellant was being questioned merely as a witness, not in custody, and not deprived of his freedom in any significant way. We find no error in the trial court's conclusion.

Next, in regards to his second police interview conducted several hours later, appellant argues that "the trial court erred in concluding that [appellant] validly waived his *Miranda* rights," and therefore, his statements should have been suppressed.

On January 1, 2006 at approximately 1:00 p.m., after being

transported by police back to the police station, appellant was interviewed for a second time. Here, unlike his previous interview, appellant's second interview was conducted by Sergeant Russell Martin Lowe in an upstairs office. At the suppression hearing, Sgt. Lowe testified that he advised appellant of his *Miranda* rights and appellant provided him with an oral statement. Thereafter, when appellant told Sgt. Lowe that he was tired and that he wanted to go home, appellant left the police station.

The trial court, contrary to appellant's claim, did not conclude, let alone discuss, whether appellant waived his *Miranda* rights at this interview. Instead, the trial court found that appellant was given his *Miranda* warnings "even though [he] was not in custody and was free to leave." We find no error in this conclusion.

Finally, in regards to his third police interview conducted on January 6, 2006, appellant again argues that the trial court erred in denying his motion to suppress because "at that point, [he] was a suspect," and that he did not voluntarily appear at the police station because he was transported there by a police officer. However, as stated above, a determination of whether a person was being questioned as a suspect, or whether that person was transported to the police station by the police, is not dispositive of the custody issue. *Mathiason,* 429 U.S. at 495; *Huysman,* 2006-Ohio-2245 at ¶ 16. Instead, such a determination of custody depends on the objective circumstances of the interrogation. *Warren,* 1996 WL 613858 at *8.

After Sgt. Lowe unsuccessfully attempted to persuade appellant to take a polygraph test, he called appellant and asked him to come to the police station so that he could "just explain * * * the problems with [his previous] statements." Prior to coming to the police station, Sgt. Lowe also informed appellant that if he came to the police station that he could then leave at anytime. A short time later, appellant arrived at the police station and again met with Sgt. Lowe in an upstairs office. Thereafter, prior to being questioned, Sgt. Lowe told appellant that he was not in custody and that he did not intend to place him in custody. After he was questioned for a short time, appellant, who was now considered a suspect, asked to go home and left the police station. Based on these facts, the trial court found appellant was not in custody during the interview. We find no error in this conclusion.

19

> In light of the foregoing, and considering the totality of the circumstances, we find no error in the trial court's determination that appellant was not in custody during the three police interviews conducted on January 1, and January 6, 2006, respectively. As a result, because appellant was not in custody during his three police interviews, a recitation of his *Miranda* warnings was not required, and therefore, his Fifth Amendment rights were not violated. Accordingly, appellant's first assignment of error is overruled.

*State v. Smith*, 2009 WL 119841, at *1-4.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U .S. Const. amend. V. The privilege against self-incrimination, applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 8 (1964), forbids the State's use of statements, "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An individual taken into custody is guaranteed the right to remain silent and to the assistance of counsel, either retained or appointed, during the custodial interrogation, and to be informed that anything he says can be used against him in a court of law. *Miranda*, 384 U.S. at 478-79.[5] The interrogation of a suspect in custody who has not received these so-called *Miranda* warnings is "presumed compelled." *Oregon v. Elstad*, 470 U.S. 298, 317 (1985). *Miranda* warnings must be administered "in the context of custodial interrogations given 'the compulsion inherent in custodial surroundings.'" *Yarborough v. Alvarado,* 541 U.S. 652, 661 (2004)(quoting *Miranda*, 384 U.S. at

---

[5] A defendant, however, can waive these rights as long as the waiver is voluntary, knowing, and intelligent. *Miranda,* 384 U.S. at 444. The Government bears the burden of proving waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

458).

A custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*  The custody determination is an objective one that "must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances." *Id.* The Court must consider (1) the circumstances surrounding the interrogation; and (2) whether a reasonable person would have felt at liberty to terminate the interrogation and leave. *Id.* (citing *Thompson v. Keohane,* 516 U.S. 99, 112  (1995)). Factors relevant to the inquiry include: "the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told [he] need not answer the questions." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

Petitioner contends that the state appellate court improperly concluded that he was not in custody while being questioned by police because Detective Jeff Funari interviewed him for two to three hours,[6] police transported him to the police station, and he did not feel free to leave.

---

[6]  Detective Funari testified that Petitioner remained at the police station during the time of his initial interview, between 2 ½ to 3 hours.  His taped statement, however, lasted only twenty minutes.  The remainder of this time, Funari was speaking with Petitioner's wife, and attempting to locate photographs for a photographic line-up so that Petitioner could make an identification of Jeremiah Miller, whom he had identified as Morrison's assailant.  *Trial Transcript*, at 156-57.  During this time, police brought Jeremiah Miller to the station for questioning.  Miller overhead Petitioner mention his (Miller's) name and was incredulous.  Miller denied even being in the same city at the time of the murder:

> I said Josh look me in the eye and tell me I was in [Washington] Court House with you[.] [H]e said I just want to go home.  Not raising his head one time. . . . I stood there. . . [H]e went to walk out the door walking right past me. . . .

*Id*. at 198.

Additionally, Petitioner complains that police never told him he could leave, accompanied him to the bathroom, denied him access to his wife, and interrogated him in a small room, requiring him to write out his answers to questions.  He again argues that his statements to police are inadmissable because police obtained his statement without first advising him of his rights under *Miranda*.

This Court is not persuaded by Petitioner's arguments.  This Court conducts "two discrete inquiries" in determining whether a defendant has been placed "in custody" so as to require police to issue the required warnings under *Miranda*.  *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004)(citing *Thompson v. Keohane*, 516 U.S. 99 (1995)).

> "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Id*. (quoting *Thomas v. Keohane*, 516 U.S. at 112)(internal quotation marks and footnote omitted).

As discussed by the state appellate court, the record indicates that, on January 1, 2006, in response to Petitioner's call to police indicating he had been a witness to a possible murder, police transported Petitioner and his wife to the station to obtain their statements.[7]  *Transcript, Hearing on Motion to Suppress*, at 9.  Petitioner provided a two page hand-written statement.  Petitioner

---

[7]  In response to Petitioner's call to police stating that he thought he had witnessed a murder, police responded to the home of Petitioner and his wife, Tanya Smith.  *Trial Transcript*, at 110-112.  Petitioner stated he had seen Jeremiah Miller hit Michelle Morrison with a PVC pipe outside a fire-damaged home on Walnut Street near the alley.  *Id*. at 118.  Police investigated that area and found Morrison's body.  *Id*. at 116.  Officer Flynn returned to Smith's residence, "picked up him and his wife and asked them if they wouldn't mind coming to the police department to make a statement of what had happened, they agreed to it and I transported them to the police department."  *Id*. at 138.

requested to go to the bathroom, and Detective Funari showed him where the bathroom was located. *Id*. at 14.  Funari spoke with Petitioner for approximately twenty minutes, and then left Petitioner to write out his own statement while Funari interviewed Petitioner's wife.  *Id*. at 19.  Sergeant Lowe later again interviewed Petitioner that same day, at which time Petitioner again gave the same statement.  Petitioner said he was tired and wanted to go home and sleep.  Police permitted him to do so.  *Id.* at 27.  Petitioner also called his wife at this time, and on two occasions got a drink from the water fountain.  *Id*. at 30.  Police never told Petitioner he could not leave.  Nor did they threaten to place him under arrest or make a show of force by handcuffing Petitioner or brandishing firearms. Police permitted Petitioner to go home when he desired to do so.  On January 6, 2006, police asked Petitioner to come to the station to explain the problems with his statements.  *Id.* at 31.  He made no further statements regarding his involvement in the crime charged at that time.  Again, police let him leave when he said he wanted to go home.  *Id.*

In view of these circumstances, this Court is not persuaded that the state appellate court's determination that the facts failed to reflect Petitioner was in custody as defined under *Miranda* constituted an unreasonable application of federal law so as to warrant federal habeas corpus relief. Even had this Court disagreed with the state court of appeals, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) *(per curiam).* "Relief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable. *Yarborough v. Alvarado*, 541 U.S. at 666 (citing *Williams,* 529 U.S., at 410; *Andrade*, 538 U.S., at 75).

Claim one is without merit.

## CLAIM FOUR

In claim four, Petitioner asserts that he was denied the effective assistance of counsel. He asserts, *inter alia*, that he was denied the effective assistance of appellate counsel because his attorney was suspended indefinitely from the practice of law and failed to pursue his direct appeal. Respondent contends that this claim is waived because Petitioner never presented it to the state courts. The state appellate court, however, construed Petitioner's letter of complaint against counsel as an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). The appellate court granted Petitioner's request to reopen his appeal, and appointed new appellate counsel on his behalf. *See Exhibits 6-9 to Return of Writ*. Therefore, this claim plainly lacks merit. Petitioner cannot establish prejudice, as that term is defined under *Strickland* based on his attorney's failure to pursue his direct appeal.

The state appellate court rejected the remainder of Petitioner's claims of ineffective assistance of trial counsel as follows:

> To demonstrate ineffective assistance of counsel, a defendant must establish that his counsel's representation fell below an objective standard of reasonableness, and was prejudiced from counsel's deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 687-691, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373. "Reversal of a conviction for ineffective assistance of counsel 'requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *State v. Hand,* 107 Ohio St.3d 378, 840 N.E.2d 151, 2006-Ohio-18, ¶ 199, quoting *Strickland* at 687. In addition, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

24

"Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance." *State v. Carver,* Montgomery App. No. 21328, 2008-Ohio-4631, ¶ 112, citing *Strickland* at 689. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *Carver* at ¶ 112.

Appellant argues that his trial counsel was ineffective because he failed to object to the state calling his wife as a witness at trial. However, "the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Hale,* 119 Ohio St.3d 118, 892 N.E.2d 864, 2008-Ohio-3426, ¶ 233. Further, as was discussed above in his second assignment of error, once appellant called his wife to testify at the suppression hearing he waived any challenge as to the issue of her competency under Evid.R. 601, and therefore, no error occurred. *Smith,* 2003-Ohio-2850 at ¶ 10. As a result, because we find that no error occurred, appellant cannot establish prejudice due to his trial counsel's failure to object to the same. Therefore, we find appellant's claim of ineffective assistance of counsel based on his trial counsel's failure to object to the state calling his wife as a witness at trial is without merit.

Next, appellant argues that his trial counsel was ineffective because he failed to object to the "bad act" testimony of Officer Boone when she testified that appellant and his wife were "usually screaming and yelling" when she responded to domestic violence calls at their residence. Specifically, appellant claims that the failure to object to the testimony amounted to ineffective assistance because such testimony "unfairly bolstered" the state's case-in-chief. However, as stated above, the testimony of Officer Boone, which was reiterated in the state's closing argument, was not introduced in an attempt to show appellant was involved in prior bad acts, but instead, used to highlight the unusual nature of the residence when the police arrived at his home on the morning of January 1, 2006. As a result, we find appellant's claim of ineffective assistance of counsel based on the failure to object to the testimony of Officer Boone is without merit.

Appellant also argues that his trial counsel was ineffective because he failed to object to "vast amounts of hearsay" testimony from Det. Funari. Specifically, appellant claims that his trial counsel was

25

ineffective because he failed to object to Det. Funari's testimony regarding his contact with J.M., the original suspect in the murder, and the man appellant claimed had murdered Morrison in his initial interview. However, as appellant notes, and to which we agree, most of Det. Funari's testimony regarding police contact with J.M. also "came out at trial directly from them" on cross-examination. As a result, based on our review of the record, we find appellant's claim of ineffective assistance of counsel based on his failure to object to the testimony of Det. Funari is without merit.

Next, appellant argues that his trial counsel was ineffective because he failed to subpoena necessary witnesses to show "major inconsistencies" in statements concerning D.G., a suspect police later eliminated from consideration, in an effort to prove the police "rushed to judgment" in charging him with murder. Appellant claims that "perhaps the jury would have found that reasonable doubt existed as to whether [he] committed the crime, or merely witnessed it" if these witnesses were subpoenaed.

The mere failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty absent a showing of prejudice. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230, 598 N.E.2d 1324, citing *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 486 N.E.2d 108; *State v. Reese* (1982), 8 Ohio App.3d 202, 203, 456 N.E.2d 1253.

Based on our review of the record, we fail to see how the alleged "necessary witnesses" would have assisted appellant in his case or supported his claim that the police "rushed to judgment" in charging him with Morrison's murder. Here, none of the witnesses had any firsthand knowledge regarding the murder, nor do they support appellant's theory that he witnessed the two men, who he now refuses to identify, kill Morrison. In turn, because these witnesses were merely collateral, appellant has not demonstrated that he was prejudiced by the failure to subpoena these witnesses. Accordingly, we find his claim of ineffective assistance is without merit.

Appellant further argues that his trial counsel was ineffective because he failed to adequately investigate Henry, appellant's cellmate. Specifically, appellant claims that his trial counsel was ineffective because he failed to investigate "the other occupants in a cell with

26

[appellant] and Henry to prove that Henry fabricated his story," failed to obtain Henry's records regarding his prior DUI arrest, and failed to "inquire about Henry's probation status from his prior felonies."

It is well-established that a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *Coulter,* 75 Ohio App.3d at 230, 598 N.E.2d 1324, citing *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. As a result, we find appellant's trial counsel's failure to investigate more fully the criminal background of Henry amounts to nothing more than defense strategy and trial tactic. Further, the benefits of such an investigation, if any, are purely speculative, and even if such an investigation would have been fruitful, it does not necessarily indicate that his trial counsel was otherwise ineffective. See *Hale,* 2008-Ohio-3426 at ¶ 232, 119 Ohio St.3d 118, 892 N.E.2d 864.

Next, appellant claims that his trial counsel was ineffective because he failed to move for a mistrial after discovering the transcript of his wife's January 1, 2006 statement to police was incorrect. However, once it was agreed that the transcript of Wife's testimony was incorrect, the trial court instructed the jury "to disregard completely any reference to that phrase 'fight me for a gun' and any questions and answers that were generated by it. It was simply a transcriptionist error and in some of the language is difficult to interpret but that interpretation was incorrect * * *." (Internal quotations added.) Further, as the trial court stated in its jury instructions, "[s]tatements or answers that were stricken by the court or which you were instructed to disregard are not evidence and must be treated as though you never heard them."

We find that the trial court did not err by admitting an amended statement of Wife's testimony and by providing the jury with such a curative instruction. As noted above, we must presume that the jury followed the trial court's instructions. See *Manns,* 2006-Ohio-5802, 169 Ohio App.3d 687, 864 N.E.2d 657. As a result, we find appellant's claim of ineffective assistance of counsel based on his failure to move for a new trial is without merit.

*State v. Smith*, 2009 WL 119841, at *8-10. Again, the record fails to reflect that the state appellate

court's decision is unreasonable so as to warrant federal habeas corpus relief. 28 U.S.C. § 2254(d),

(e).

The state appellate court concluded that Petitioner had waived any right to challenge his wife's competency to testify against him under Rule 601(B) by calling her as a witness at the motion to suppress hearing.  This Court will not second-guess that determination here.  *See Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001)("[g]enerally, a federal habeas court should not second-guess a state court's decision concerning matters of state law"); *Bradshaw v. Richey*, 546 U.S. 74 (2005)("a state court's interpretation of state law. . . binds a federal court sitting on habeas review").  Therefore, Petitioner cannot establish that his attorney acted unreasonably in failing to object to his wife's testimony.  Moreover, the Court notes that Petitioner cannot establish prejudice.  When called as a prosecution witness, Tanya Smith stated she had seen the victim earlier on New Years Eve, and that Petitioner came home early on New Years Day upset and crying, wanting to call the police because he had witnessed a potential murder.  These facts were not in dispute.  Various other witnesses testified and confirmed these facts throughout the trial.

Petitioner likewise cannot establish prejudice as that term is defined under *Strickland* from Officer Boone's testimony.  Boone had been called to Petitioner's home "on domestics" several times in the past.  *Trial Transcript*, at 110.

> [T]here was a light on in the garage which struck me as odd. . . . and I couldn't hear any voices.   I didn't hear any screaming or yelling, there was nobody outside, which again struck me as odd, because they were usually screaming and yelling whenever we got there.

*Id*. at 111.  Admission of this testimony does not undermine confidence in the outcome of the proceedings.  *Strickland*, 466 U.S. at 694.

Further, nothing in the record supports Petitioner's contention that any witnesses not called

28

by defense counsel would have provided exculpatory testimony for the defense or that further investigation of Petitioner's cell mates would have assisted him.  Phillip Henry was incarcerated at the time at issue on DUI charges and for violating his probation.  He had prior convictions for theft by deception and money laundering, and had served time in prison.  *Trial Transcript*, at 505-07; 518-19.  He wrote bad checks from 1999-2001.  *Id.* at 519.  According to Henry, he and Petitioner were alone in the four-man cell for four days.  *Id*. at 518.

Similarly, Petitioner has failed to establish prejudice by any alleged hearsay testimony from Detective Funari regarding statements of Jeremiah Miller or, for the reasons set forth by the state appellate court, admission of the transcript of Tanya Smith's statement to police.  Both Miller and Miller's wife, Melissa, testified at trial and were available for cross examination.

Claim four is without merit.

### CLAIMS SIX AND SEVEN

In claim six, Petitioner asserts that the evidence was constitutionally insufficient to sustain his murder conviction.  In claim seven, Petitioner asserts that his conviction was against the manifest weight of the evidence.  The state appellate court rejected these claims, in relevant part, as follows:

> Whether the evidence presented is legally sufficient to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 1997-Ohio-52. An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to determine whether such evidence, if believed, would support a conviction.  *State v. Carroll,* Clermont App. Nos. CA2007-02-030, CA2007-03-041, 2007-Ohio-7075, ¶ 117. After examining the evidence in a light most favorable to the prosecution, the appellate court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Proof beyond a reasonable doubt is "proof of such character that an ordinary person would be willing to

rely and act upon it in the most important of his own affairs." R.C. 2901.05(D).

*** 

"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Wilson,* Warren App. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. . . .

Appellant argues his conviction should be reversed because the state presented "no evidence" that he was the perpetrator of the crime. Specifically, appellant claims that the jury's verdict "depended entirely upon whom it chose to believe" and was "based entirely on the credibility of Phillip Henry, a jailhouse snitch, an alcoholic, [and] convicted felon," and therefore, the evidence does not support his conviction. This argument lacks merit.

At trial, Henry testified that he was an acquaintance of appellant who had played pool with him at a bar previously. Further, Henry testified that, while serving time for DUI and a probation violation, he was placed in a four-man cell with appellant, who, at the time, was awaiting trial. After being placed in a cell with appellant, Henry testified that the two began to talk and that appellant asked him to be a witness for his defense and "to say that [he] was [working] on the bar that night." Henry also testified that appellant told him that he almost confessed to Morrison's murder but "it took every bit of his life not to just fold and fumble right there" when looking at pictures of her body, and that calling the police to report he was a witness to Morrison's murder was the "biggest mistake he ever made in his life."

Henry also testified that appellant confessed to the Morrison's murder. Specifically, Henry testified that appellant told him that his wife and Morrison had gotten into an altercation, which prompted his wife to hit Morrison with a PVC pipe. Thereafter, Henry testified that appellant told him he "panicked, didn't know what to do" and that he "finished everything." Furthermore, Henry testified that appellant told him he "cleaned up" by wiping down the pipe with his wife's bandana and by pouring paint thinner on his shoes to conceal any evidence. Finally, Henry testified that "the only key thing that was told to [him] is that [appellant] had to try to clean up the mess and finish [Morrison] off [but] it took him three attempts to do it."

Further, contrary to appellant's claim, the state provided evidence, albeit circumstantial, to support the jury's guilt finding. See, e.g., *State v. Carmen,* Clinton App. No. CA2007-05-028, 2008-Ohio-5841, ¶ 15 (the state can use either direct or circumstantial evidence to prove the elements of a crime). Here, the evidence presented indicated that appellant was seen talking with Morrison on the night of her murder, that he was present at the scene during her murder, which occurred at a vacant house where appellant had previously resided, and that he hailed a cab near the scene of the crime at approximately 3:45 a.m., mere minutes after Morrison's presumed time of death.

In his defense, appellant testified that his original statement to police implicating J.M. in Morrison's murder was false, but that he actually saw her attacked and beaten by two men who had been smoking crack cocaine in an alley behind his former residence. After he saw Morrison attacked, he became scared and ran into the vacant house and hid in a small furnace room where he stayed while the two men dragged Morrison inside the house and hit her with a PVC pipe, killing her. Further, although appellant claimed to have known one of the men who attacked Morrison, he refused to identify the attacker because he felt threatened and believed that his family was in danger.

While there may be a question as to Henry's credibility, "the weight to be given the evidence and the credibility of witnesses are primarily for the trier of facts." *State v. Pringle,* Butler App. Nos. CA2007-08-193, CA2007-09-238, 2008-Ohio-5421, ¶ 28. As a result, we defer to the jury's decision finding Henry's testimony credible, even after being subject to a lengthy cross-examination, because the jury was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

After reviewing the record, we cannot say that the jury clearly lost its way in finding Henry's testimony to be competent, credible and reliable, or that the circumstantial evidence presented by the state did not support his conviction. As a result, because we cannot say appellant's conviction created such a manifest miscarriage of justice that his conviction must be reversed, we find no reason to disturb the jury's finding of guilt. Therefore, appellant's fifth, sixth, and seventh assignments of error are overruled.

31

*State v. Smith*, 2009 WL 119841, at *10-12.

**A.      Claim Six - Sufficiency of the Evidence**

Petitioner asserts in claim six that the evidence was constitutionally insufficient to sustain his convictions. For a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Wright v. West*, 505 U.S. 277, 296 (1992)(quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Further, this Court affords a "double layer" of deference to state court determinations about the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference is due to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas corpus petitioner to overcome, and Petitioner has not done so here.

Petitioner contends that the evidence was constitutionally insufficient to sustain his

conviction for murder, because the State failed to introduce any physical evidence or witnesses to testify that he was Michelle Morrison's killer.  He had no blood on his clothing.  Tanya Smith testified that Petitioner was scared, had no stains on his clothing, and told stories of being stalked, threatened, and terrorized by the true killers.  Petitioner complains that the testimony of Phillip Henry, a jailhouse snitch and convicted felon with an extensive criminal record, provided the only evidence against him, and that Henry's testimony was not credible.  He alleges that police improperly charged him solely because he gave an initial untruthful statement to law enforcement.  *See Petition, Traverse.*   Petitioner's arguments are not persuasive.  First, as to his assertions regarding the trustworthiness of Phillip Henry's testimony, "[a]ssessment of the credibility of the witnesses is beyond the scope of federal habeas corpus review of a claim of insufficient evidence."  *Bowen v. Haney,* 622 F.Supp.2d 516, 546 (W.D. Ky. 2008)(citing *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir.2003)(internal citation omitted).  Moreover, circumstantial evidence alone may support a guilty verdict "and is not required to eliminate any reasonable hypothesis except that of the defendant's guilt."  *Id*. (citing *United States v. Talley,* 194 F.3d 758 (6th Cir. 1999).  Based on the evidence, it was not an unreasonable application of federal law for a state court to find that a rational trier of fact would find beyond a reasonable doubt that Petitioner committed the crime of murder.

**B.    Claim Seven - Manifest Weight of the Evidence**

The law recognizes a distinction between a claim asserting that a criminal conviction is against the manifest weight of the evidence and a claim under the Due Process Clause of the Fourteenth Amendment regarding sufficiency of the evidence.  This Court thoroughly discussed the distinction in *Echols v. Houck*, No. C-1-03-66, 2005 WL 1745475 at *3 (S.D. Ohio, July 25, 2005) as follows:

33

In essence, sufficiency, which implicates due process concerns, tests the adequacy of the evidence in proving the essential elements of the offense charged and presents a question of law, which may not be resolved by the reviewing court through weighing the evidence. In contrast, in determining whether reversal is warranted based on the weight of the evidence, the appellate court sits as a 'thirteenth juror' to assess the jury's resolution of conflicting testimony upon review of the entire record, which includes weighing the evidence and all reasonable inferences and considering the credibility of witnesses. *Thompkins*, 678 N.E.2d at 546–47; *see also Tibbs*, 457 U.S. at 41–42; *Martin*, 485 N.E.2d 720–21.

As the Supreme Court explained in *Tibbs*, 457 U.S. at 43, unlike a reversal on the ground of insufficient evidence, a reversal based on the weight of the evidence 'does not mean that acquittal was the only proper verdict.' Rather, a reversal based on the weight of the evidence 'can occur only after the State both has presented sufficient evidence to support a conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. *Id.* at 42–43.

A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law, or treaties of the United States, 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus 'on the basis of a perceived error of state law.' *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 ... (1984); Smith v. Sowders, 848 F.2d 735, 738 (6th Cir.), cert. denied, 488 U.S. 866, 109 S.Ct. 169, 102 L.Ed.2d 139 . . . (1988).

Based on this analysis, the District Court in *Echols* dismissed the petitioner's claim that his conviction was against the manifest weight of the evidence because it did not implicate a federal constitutional concern but instead raised an issue of state law that was not cognizable upon federal habeas review. *Echols*, 2005 WL 1745475 at *3. The same reasoning and result apply to Petitioner's claim here that his conviction was against the manifest weight of the evidence. Petitioner's claim that his convictions are against the manifest weight of the evidence cannot be considered by this Court.

Thus, claim six is without merit and claim seven provides no basis for federal habeas corpus relief.

34

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

DATE:         January 11, 2012                    *  /s/  Elizabeth A. Preston Deavers*
                                                **ELIZABETH A. PRESTON DEAVERS**
                                                **UNITED STATES MAGISTRATE JUDGE**